Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE M. PADILLA, as the Special Administrator of the Estate of Maximilian Padilla, </br></br> Plaintiff, </br></br> -v- </br></br> HUNTER DOUGLAS WINDOW COVERINGS, INC.; WINDOW COVERING MANUFACTURERS ASSOCIATION; AND WINDOW COVERING SAFETY COUNCIL, AMERICAN BLIND AND WALLPAPER FACTORY, INC. </br></br> Defendants. | Case No. 09 CV 1222 </br></br> Judge Robert M. Dow, Jr. </br> Magistrate Judge Ashman |

**PLANTIFF'S FIRST AMENDED COMPLAINT AT LAW**

Plaintiffs, JOSE M. PADILLA, as the Special Administrator of the Estate of Plaintiff's Decedent, Maximilian Padilla, by their attorneys Arturo Jauregui and Jauregui & Associates, P.C., and for his Complaint at law against Defendants HUNTER DOUGLAS WINDOW COVERINGS, INC., WINDOW COVERING MANUFACTURERS ASSOCIATION, WINDOW COVERING SAFETY COUNCIL, and AMERICAN BLIND & WALLPAPER FACTORY, INC. and states as follows:

**THE PARTIES**

1. At all relevant times mentioned herein, Plaintiff JOSE M. PADILLA, was and is a resident of Oak Forest, County of Cook, State of Illinois.

2. On April 22, 2008, Plaintiff's Decedent, Max Padilla, a child three years of age,

1

...er he got entangled with a miniblind metal beaded chain cord manufactured by Defendant HUNTER DOUGLAS.

3. Upon information and belief, the metal beaded chain cord vertical miniblind was purchased within Cook County, State of Illinois.

4. At all relevant times mentioned herein, Defendant HUNTER DOUGLAS WINDOW COVERINGS INC., (hereinafter, "HUNTER DOUGLAS") was and is a Delaware Corporation authorized to do, and is doing business in the State of Illinois. On April 22, 2008, Defendant HUNTER DOUGLAS was in the business of designing, and/or manufacturing, assembling and/or marketing and selling window coverings, including vertical miniblinds with cords and metal bead chains exceeding 7 ¼ inches in length, like the one which caused the death by strangulation of Plaintiff's Decedent Maximilian Padilla.

5. Defendant HUNTER DOUGLAS can be served through its registered agent Corporation Service Company, at 830 Bear Tavern Road, Trenton, NJ 08628.

6. At all relevant times mentioned herein, DEFENDANT WINDOW COVERING MANUFACTURERS ASSOCIATION (hereinafter "WCMA") is an industry trade group that represents and promotes the interests of the window covering industry manufacturers, fabricators and assemblers. Defendant WCMA is further responsible for developing and implementing standards for the manufacture of window coverings, including vertical miniblinds with metal bead chains, and cords, or any type of flexible looped device in their operation. Defendant HUNTER DOUGLAS is a member of the WCMA.

7. Defendant WCMA can be served through its registered agent at 355 Lexington Ave., Suite 1500 Floor, New York, New York, 10017.

8. Defendant WINDOW COVERING SAFETY COUNCIL (hereinafter, "WCSC") is

Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

, importers and retailers of window coverings and is responsible for educating consumers about window cord safety, including the potential window-cord hazards facing young children, provide consumers with window cord retrofit kits and information, and promote the industry's purported commitment to product quality and safety. Defendant HUNTER DOUGLAS is a member of the WCSC.

9. The WCSC can be served through its Registered Agent at 355 Lexington Avenue, Suite 1500, New York, New York, 10017.

10. Defendant American Blind and Wallpaper, Inc., is a Michigan corporation authorized to do business in the State of Illinois. Upon Information and belief, the miniblind at issue was purchased over the internet from Defendant American Blind and Wallpaper Factory, Inc.

11. Defendant American Blind and Wallpaper, Inc., can be served through its registered agent at The Corporation Company, 30600 Telegraph Rd., Bingham Farms, Michigan 48025.

12. Defendants were aware, and have been aware for some time, of the dangers associated with corded and metal bead chains window coverings at least since the 1980's. Defendant HUNTER DOUGLAS in particular, knew of the danger of accidental strangulation window coverings with cords and metal bead chains pose to children younger than five years old. Specifically, as early as 1985 Defendant HUNTER DOUGLAS knew that an average of 10 such accidental strangulations of young children was being reported annually to the United States Consumer Product Safety Commission.

13. By 1991, the number of accidental strangulations of young children annually

3

Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

ing the increase of child incidents and death as a result of a well-known hazard and defect of Defendant's HUNTER DOUGLAS's corded and metal bead chain vertical miniblinds, defendant HUNTER DOUGLAS failed to take corrective action.

14. Over the last 30 years, more than 339 children have been killed on cords and metal bead chains from miniblinds and window coverings, yet Defendants have failed to take corrective action to remove from homes or otherwise correct these dangerous and defective miniblinds with cords and metal bead chains capable of forming loops, and have sold these items to consumers without adequate warning about the dangers associated with their defective product.

15. The Consumer Product Safety Commission documented that between 1981 and 1995, there have been 170 strangulation deaths from both pull-cords and inner cords. The CPSC directly communicated this information to Defendants.

16. A 1997 Study by the Journal of American Medical Association (JAMA) found that earlier statistics of death from cord strangulation had been under reported by some 49% and JAMA put the number of strangulations between 1981 and 1995 at 359. Most of these deaths 93% involved children three years old and younger. The CPSC communicated this information directly to defendants.

17. Defendants were further aware that the most common ways how children were getting strangled by the cords was by sleeping or playing, and trying to look out of a window, climb on furniture lose their footing and get caught in the window cords.

18. For the last twenty years, Defendants were made aware of the mounting deaths from strangulation of young children from window covering cords. They were specifically made aware from reports from the Consumer Product Safety Commission the public, and from their

Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

. Yet notwithstanding that knowledge, Defendants, failed to take measures to adequately address the deathly hazard that window covering cords posed to young children.

19. Notwithstanding the well-known dangers that corded and metal bead chains in vertical miniblinds pose to young children, Defendants continued to represent and/warrant to consumers, including the Plaintiff, that the vertical miniblinds were safe and free from product defects. Defendants continued to sell said defective vertical blinds, concealing their knowledge of such hazards from consumers and others likely to come into contact with said defective products, including the Plaintiff.

## COUNT I

**(Strict Liability: Hunter Douglas Window Coverings, Inc., Defendant)**

20. Plaintiff realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 19 as if fully set forth herein.

21. As a result of the United States Consumer Product Safety Commission's directives, Defendants, acknowledged the defective nature of their products and engaged in a voluntary retrofit/recall program from 1994 through 1996. The retrofit program advised consumers that separating the cords and placing a tassel on the end of each cord would eliminate the product danger and defect.

22. Defendants were aware that such retrofit action did not eliminate the danger and defect even if implemented. But more importantly, Defendants failed to use ordinary care to insure removal from the homes of consumers, like that of the Plaintiff, vertical miniblinds with looped cords and metal bead chains, or otherwise have such window coverings adequately corrected and rendered safe.

5

corded metal bead chain vertical miniblind at issue left the control of Defendant, HUNTER DOUGLAS, it was in a defective condition and was unreasonably dangerous in one or more of the following ways:

    a. the miniblind was designed and or manufactured with a cord and metal bead chain capable of hanging greater than 7 ¼ inches posing an unreasonable risk of strangulation, injury and death to young children;

    b. the miniblind had a cord and metal bead chain capable of forming loops of sufficient size to pose an unreasonable risk of strangulation injury, and death to young children;

    c. the miniblind was placed in the stream of commerce without adequate warnings of the dangers associated with cord and metal bead chain lengths greater that 7 ¼ inches, and the risks associated with loops and metal bead chains of serious injury and strangulation to young children;

    d. Defendant's retrofit/corrective action plans from 1994 to 1996, and 2000 did not adequately correct the defects and dangers posed by corded and bead chain miniblinds nor did it remove these defective products from consumers' homes.

24. When the corded metal bead chain vertical miniblind left the control of Defendant HUNTER DOUGLAS, there were safer, feasible alternative designs that would have prevented or significantly reduced the risk of serious injury including death by strangulation to children younger than five years old, without substantially impairing the utility of the vertical miniblind.

25. The unreasonably dangerous nature of the defective vertical miniblinds created a high probability that the corded metal bead chain vertical miniblind at issue was capable of forming loops that could cause strangulation and death to young children, without adequate warning of the risk.

26. As a proximate result of one or more of the foregoing, on April 22, 2008, the metal beaded chain of the vertical miniblind, became entangled around MAXIMILIAN's neck and caused his death by strangulation.

6

MAXIMILIAN PADILLA suffered conscious pain and mental anguish from the time when he first became entangled with the metal beaded chain of the vertical miniblind until the time of his death, and Plaintiff seeks compensation for these damages pursuant to the "Survival Act," 755 ILCS 5/27-6.

28.     Plaintiff brings this action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq*., as they each have suffered the loss of MAXIMILIAN PADILLA's society, companionship, and love as well as having suffered pecuniary injury, including, but not limited to, the loss of money, goods and services.

29.     Plaintiff Jose M. Padilla, has been duly appointed as the Special Administrator of the Estate of Plaintiff's Decedent Maximilian Padilla pursuant to 755 ILCS 5/27-6, and brings this Action in that capacity.

30.     At the time of his death, Maximillian Padilla left the following next of kin, each having lost his society, companionship and love as well as having suffered pecuniary injury, including, but not limited to, the loss of money, goods and services:

>      Jose M. Padilla, (father)
> 
>      Ruth Jacqueline Padilla (mother)
> 
>      Carolina Padilla (minor, sister)
> 
>      Jacqueline Padilla (minor, sister)

WHEREFORE, the Plaintiff, JOSE M. PADILLA, as Representative of the Estate of Plaintiff's Decendent MAXIMILIAN PADILLA, prays that this court enter judgment against Defendants HUNTER DOUGLAS WINDOW COVERINGS, INC., and its agents, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.


Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

## COUNT II

**(Negligence: Hunter Douglas Window Coverings, Inc., Defendant)**

31. Plaintiff realleges each of the foregoing allegations contained in paragraphs 1 through 30 and incorporates them by reference as if fully set forth herein.

32. Defendants voluntary undertook a retrofit/recall between 1994 and 1996, individually and through Defendants WINDOW COVERING MANUFACTURERS ASSOCIATON, and WINDOW COVERING SAFETY COUNCIL in order to avoid a mandatory recall by the U.S. Consumer Product Safety Commission.

33. To assist in the implementation of the voluntary retrofit/recall, Defendants, including HUNTER DOUGLAS, and WINDOW COVERING MANUFACTURERS ASSOCIATION created the WINDOW COVERING SAFETY COUNCIL and funded it so that it could provide retrofit kits to past purchasers to purportedly make safer the defective and unreasonable dangerous miniblinds, including vertical miniblinds with cords and metal bead chains greater than 7 ¼ inches in length previously sold to consumers. The WCSC's efforts were allegedly aimed at warning, and informing consumers, of the dangers of strangulation that these miniblinds with cords and metal beaded chains posed to infants and young children.

34. Defendant HUNTER DOUGLAS had a duty to exercise due care in the design, testing, manufacturing, marketing and selling of the vertical miniblinds with cords and bead chains in excess of 7 ¼ inches long, so that they would be reasonably safe for their intended use.

35. Defendant knew or should have known, that Maximilian Padilla, as a member of the general public, would come into contact with the vertical miniblind's bead chain.

36. Defendant knew or should have known of the danger associated with the bead chains of vertical blinds would not be obvious to young children, their parents, or the general

8


Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

ER DOUGLAS that young children would come into contact with the bead chains of the vertical miniblinds and they could suffer serious injury or harm, including death by strangulation.

37. In breach of its duties, Defendant negligently and carelessly committed one or more of the following acts or omissions:

a. Negligently designed the vertical miniblind at issue;

b. The vertical miniblind at issue failed to contain warnings of the dangers associated with cord and metal bead chain lengths greater than 7 ¼ inches and the risks of strangulation to young children associated these cords and metal bead chains.

c. At the time Defendants voluntarily undertook the duty to retrofit/recall and warn campaign, defendants knew that their recall/retrofit program would be insufficient to eliminate the unreasonable risk associated with its defective product would remain after the recall/retrofit program was effectuated;

d. Defendants' campaign was underfunded and not widely publicized or disseminated, in that on April 22, 2008, despite there being approximately one billion dangerous miniblinds and window coverings in existence throughout the United States, including in Cook County, Illinois, only several hundred thousands of the retrofit kits had been distributed;

e. Defendants' retrofit/recall and warning campaign was further ineffective in that in failed to reach consumers like the Plaintiff, whose vertical miniblinds had been previously installed in their home before they purchased the home;

f. Defendants failed to exercise ordinary care in removing known dangers from the vertical minblinds with cords and metal bead chains exceeding of 7 ¼ inches in length.

38. As proximate result of one or more of the foregoing unreasonably dangerous conditions, on April 22, 2008, three year old MAXIMILIAN PADILLA died from strangulation by the miniblind metal bead cord manufactured by Defendant HUNTER DOUGLAS.

39. Plaintiff's Decedent MAXIMILIAN PADILLA suffered conscious pain and mental anguish from the time when he first became entangled with the metal bead chain of the

9

Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

...death, and Plaintiff seeks compensation for these damages pursuant to the "Survival Act," 755 ILCS 5/27-6.

40. On or before April 22, 2008, the "Wrongful Death Act," 740 ILCS was in full force and effect.

41. Plaintiff Jose M. Padilla, has been duly appointed as the Special Administrator of the Estate of Plaintiff's Decedent Maximilian Padilla pursuant to 755 ILCS 5/27-6, and brings this Action in that capacity.

42. At the time of his death, Maximillian Padilla left the following next of kin, each having lost his society, companionship and love as well as having suffered pecuniary injury, including, but not limited to, the loss of money, goods and services:

> Jose M. Padilla, (father)
>
> Ruth Jacqueline Padilla (mother)
>
> Carolina Padilla (minor, sister)
>
> Jacqueline Padilla (minor, sister)

WHEREFORE, the Plaintiff, JOSE M. PADILLA, as Representative of Plaintiff's Estate MAXIMILIAN PADILLA, prays that this court enter judgment against Defendants HUNTER DOUGLAS WINDOW COVERINGS, INC., and its agents, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

## COUNT III
**(Breach of Warranty: Hunter Douglas Window Coverings, Inc., Defendant)**

43. Plaintiff incorporates by reference and realleges each of the foregoing allegations contained in paragraphs 1 through 42 as if fully set forth herein.

44. Defendant HUNTER DOUGLAS expressly and impliedly represented and warranted that the miniblinds with cords and metal beaded chains exceeding 7 ¼ inches in length

10

PDF Complete. Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

... free from defects, child safe, merchantable, and fit for the intended purpose, when they were not.

45. Plaintiff relied on the express and implied warranties when using the miniblind in his home.

46. Contrary to the express and implied warranties, the corded and metal bead chain miniblinds were not merchantable at the time of purchase, in that they were defectively designed and not safe for use throughout the household, as warranted. In fact, given their defective nature, they were unsafe for use anywhere small children played or where otherwise present, and thus not suitable for the purpose for which they were made and intended.

47. Defendant breached its express and implied warranties by selling to the public miniblinds with serious and inherent defects. Further, Defendant made and/or allowed these warranties to be made with the intent of inducing consumers, like Plaintiff, to purchase and/or continue to use and display in his home corded and metal bead chain miniblinds.

48. If Plaintiff had known the true facts about the dangers associated with corded and metal beaded chain miniblinds, he would have stopped using the vertical miniblind and would have removed the subject unit from his household.

49. Defendant's retrofit/corrective action program was designed to hide the fact that its recalled product was known to be inadequate and unsafe, in that it did not correct the defects, was underfunded to affect a meaningful solution, and actually increased the risk of harm by creating a false sense of security.

50. As proximate result of Defendant's foregoing breach of express and implied

11

Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

r old MAXIMILINA PADILLA died from strangulation caused by the vertical miniblind's metal bead chain manufactured by Defendant HUNTER DOUGLAS.

51. Plaintiff's Decedent MAXIMILIAN PADILLA suffered conscious pain and mental anguish from the time when he first became entangled with the metal bead chain of the vertical miniblind until the time of his death, and Plaintiff seeks compensation for these damages pursuant to the "Survival Act," 755 ILCS 5/27-6.

52. On or before April 22, 2008, the "Wrongful Death Act," 740 ILCS was in full force and effect.

53. Plaintiff JOSE M. PADILLA, has been duly appointed as the Special Administrator of the Estate of Plaintiff's Decedent MAXIMILIAN PADILLA pursuant to 755 ILCS 5/27-6, and brings this Action in that capacity.

54. At the time of his death, MAXIMILIAN PADILLA left the following next of kin, each having lost his society, companionship and love as well as having suffered pecuniary injury, including, but not limited to, the loss of money, goods and services:

  Jose M. Padilla, (father)

  Ruth Jacqueline Padilla (mother)

  Carolina Padilla (minor, sister)

  Jacqueline Padilla (minor, sister)

WHEREFORE, the Plaintiff, JOSE M. PADILLA, as Representative of Estate of Plaintiff's Decedent MAXIMILIAN PADILLA, prays that this court enter judgment against Defendants HUNTER DOUGLAS WINDOW COVERINGS, INC., and its agents, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.


Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

**COUNT IV**

**(Negligence: Window Covering Manufacturers Association and Window Covering Safety Council, Defendants)**

55. Plaintiff realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 54 if fully set forth herein.

56. Defendants voluntarily undertook a retrofit/recall between 1994 and 1996, in order to avoid a mandatory recall by the U.S. Consumer Product Safety Commission.

57. To assist in the implementation of the retrofit/recall, Defendants, including HUNTER DOUGLAS, and WINDOW COVERING MANUFACTURERS ASSOCIATION, created Defendant WINDOW COVERING SAFETY COUNCIL and funded it so that it could provide retrofit kits to individuals to purportedly make safer the defective and unreasonably dangerous miniblinds, including vertical miniblinds with cords and metal bead chains greater than 7 ¼ inches in length previously sold to consumers. The WCSC's efforts were allegedly aimed at adequately warning and informing consumers, of the danger of strangulation that these cords and bead chains posed to infants and young children.

58. Defendants have a long history of failing to take corrective action to adequately address the risk of strangulation to young children by developing a safer product. In 1985, the Product Safety Commission, the WCMA through its predecessor, AWCMA issued a warning to the public expressing their joint concern about accidental death and injury to young children who become entangled in cords for window coverings, and urge parents to be on the alert to this emerging hazard.

59. In light of defendants' failure to take adequate corrective action, in 1994, the Consumer Product Safety Commission threatened to take action against the window coverings industry to address this preventable hazard of strangulation of window coverings.

13

Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

force its hand on the window covering industry prompted, defendant WCMA to commit to undertake corrective action to make window coverings already in American homes safer, as well as to set standards to make window coverings safer from the flaws of the design which lead to serious injury and death from window covering cords.

61. In 1994, the Window Covering Safety Council, a creature of the Window Covering Manufacturers Association, was specifically established to spearhead a Plan of the voluntary efforts of the window covering industry, including Defendant HUNTER DOUGLAS.

62. Defendant's Window Covering Safety Council's plan was purportedly designed to lessen the likelihood of pull-cord strangulations by advising parents and consumers generally to eliminate the loop in two corded horizontal and vertical blinds by cutting the cord above the tassel; removing the equalizer buckle; adding safety tassel at the end of each cord.

63. Defendant, Window Covering Manufacturers Association and the Window Safety Council, on behalf of its members, including Defendant HUNTER DOUGLAS, represented itself as the industry's leader on all matters affecting window blind safety.

64. Defendants failed to act responsibly in successfully identifying, warning against, and promoting an industry-wide recall of, and help develop prospectively a viable standard against a known danger.

65. From its inception, defendant WCMA simply took on a task that it was not designed to meet. It had no engineers, no human factors or safety professionals, no epidemiologists or statisticians to assess and quantify the risk posed to consumers by window covering cords. Its industry members, including Defendant HUNTER DOUGLAS, knew, or should have known, that WCMA was shell-company woefully unprepared to take adequate

14

Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

... ious deathly hazard facing young children by window covering cords.

66. Notwithstanding these foregoing deficiencies, the Defendant WCMA collected membership dues from the industry and continued to represent itself to the CPSC and to the public at large, as the safety industry leader to establish effective safety standards and product warnings.

67. Defendants WCMA and WCSC pretended to have a process at work for developing a viable standard when they lacked the staffing background, or the wherewithal or the commitment of the industry at large to see its undertaking through fruition.

68. Maximilian's death was not only foreseeable but clearly preventable. If Defendants WCMA WCSC and their members, including Defendant HUNTER DOUGLAS, had simply engaged in responsible product design, and effective warnings, and correction of the design flaws identified in the window covering cords and bead chains, Maximilian Padilla's death would have been avoided.

69. Defendants had a duty to exercise due care implementing and carrying out the corrective action plan to reduce or eliminate the identified strangulation hazard, so that the affected window coverings would be reasonably safe for their intended use.

70. In undertaking the duty to warn, recall, and retrofit, defendants had a duty of ordinary care and reasonable care just as any industry association would have in being charged with effectuating and engaging in a retrofit/recall program to correct an indentified hazard.

71. By undertaking said duty, defendants WCMA and WCSC assumed the duty of the defendant manufacturer, HUNTER DOUGLAS, to perform in a non-negligent corrective

15

PDF Complete. Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features

ly designed to eliminate the identified strangulation hazard. Defendants are therefore jointly and severally liable for their actions and inactions.

72. Defendants knew, or should have known, that Plaintiff's Decedent MAXIMILIAN PADILLA, as a member of the general public would come into contact with the vertical miniblind's metal bead chain, and be subject to the foreseeable and predictable risk which they failed to adequately correct.

73. Defendants knew that the danger associated with the metal bead chains of vertical blinds would not be obvious to young children, their parents, or to the general public. They also knew that it was foreseeable that young children would come into contact with the metal bead chains and suffer serious injury or harm, including death by strangulation.

74. In breach of their duties, defendants negligently and carelessly committed one or more of the following acts or omissions:

  a. The vertical miniblind at issue failed to contain adequate warnings of the dangers associated with cord and metal bead chain lengths greater than 7 ¼ inches and the risks of strangulation to young children associated these cords and metal bead chains;

  b. Notwithstanding Defendants' knowledge of the foregoing defects, Defendants engaged in a retrofit/voluntary corrective action from 1994 to 1996. Defendants knew and were aware that their actions would fail to adequately correct the problem, failed to take appropriate action to remove from consumers' homes, including that of the Plaintiff's, vertical miniblinds with external cords and metal bead chains with lengths in excess of 7 ¼ inches, capable of forming loops of sufficient size to pose an unreasonable risk of strangulation injury, and death to young children;

  g. At the time Defendants voluntarily undertook the duty to retrofit/recall and warn campaign, defendants knew that their recall/retrofit program would be insufficient to eliminate the unreasonable risk associated with its defective product would remain after the recall/retrofit program was effectuated;

  h. Defendants' campaign was underfunded and not widely publicized or disseminated, in that on April 22, 2008, despite there being approximately one billion dangerous miniblinds and window coverings being in existence throughout the United States,

16


Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

llinois, only several hundred thousands of the retrofit kits

    i.    Defendants' retrofit/recall and warning campaign was further ineffective in that in failed to reach consumers like the Plaintiff, whose vertical miniblinds had been previously installed in their home before they purchased the home;

    j.    Defendants failed to exercise ordinary care in removing known dangers from the vertical minblinds with cords and metal bead chains exceeding of 7 ¼ inches in length.

75. As a proximate result of one or more of the foregoing acts or omissions, on April 22, 2008, three year old Maximillian Padilla died from strangulation by the vertical miniblind's metal bead cord manufactured by Defendant HUNTER DOUGLAS.

76. Plaintiff's Decedent MAXIMILIAN PADILLA suffered conscious pain and mental anguish from the time when he first became entangled with the metal bead chain of the vertical miniblind until the time of his death, and Plaintiff seeks compensation for these damages pursuant to the "Survival Act," 755 ILCS 5/27-6.

77. On or before April 22, 2008, the "Wrongful Death Act," 740 ILCS was in full force and effect.

78. Plaintiff Jose M. Padilla, has been duly appointed as the Special Administrator of the Estate of Plaintiff's Decedent MAXIMILIAN PADILLA pursuant to 755 ILCS 5/27-6, and brings this Action in that capacity.

79. At the time of his death, Plaintiff's Decedent MAXIMILIAN PADILLA left the following next of kin, each having lost his society, companionship and love as well as having suffered pecuniary injury, including, but not limited to, the loss of money, goods and services:

    Jose M. Padilla, (father)
    Ruth Jacqueline Padilla (mother)
    Carolina Padilla (minor, sister)
    Jacqueline Padilla (minor, sister)



JOSE M. PADILLA, as Representative of Plaintiff's Estate of MAXIMILIAN PADILLA, prays that this court enter judgment against Defendants WINDOW COVERING MANUFACTURERS ASSOCIATION, and WINDOW CONVERING SAFETY COUNCIL, and their agents, in a sum in excess of FIFTY THOUSAND ($50,000.00) DOLLARS.

**COUNT IV**
**(Breach of Warranty: American Blind and Wallpaper Factory, Inc. Defendant)**

80. Plaintiff realleges and incorporates by reference each of the foregoing allegations contained in paragraphs 1 through 79 if fully set forth herein.

81. Defendant American Blind and Wallpaper Factory, Inc. expressly and impliedly warranted to the public generally, and to the plaintiff in this case, that the vertical miniblind in question was fit for its intended purpose.

82. Plaintiff Jose M. Padilla relied on the express and implied warranties when using the miniblind.

83. Contrary to the express and implied warranties, the vertical miniblind in question was unreasonably dangerous and not fit for its intended use.

84. Defendant, American Blind and Wallpaper Factory, Inc., breached the express and implied warranties when the Defendant continued to sell a defective product and failed to warn the public about the unreasonably well-known dangers that corded and metal bead chains in vertical miniblinds pose to young children. Defendant continued to represent and/warrant to consumers, including the Plaintiff, that the vertical miniblinds were safe and free from product defects. Defendant continued to sell said defective vertical blinds, concealing its knowledge of such hazards from consumers and others likely to come into contact with said defective products, including the Plaintiff.

one or more of the foregoing acts or omissions, on April 22, 2008, three year old Maximilian Padilla died from strangulation by the vertical miniblind's metal bead cord manufactured by Defendant HUNTER DOUGLAS.

86. Plaintiff's Decedent MAXIMILIAN PADILLA suffered conscious pain and mental anguish from the time when he first became entangled with the metal bead chain of the vertical miniblind until the time of his death, and Plaintiff seeks compensation for these damages pursuant to the "Survival Act," 755 ILCS 5/27-6.

87. On or before April 22, 2008, the "Wrongful Death Act," 740 ILCS was in full force and effect.

88. Plaintiff Jose M. Padilla, has been duly appointed as the Special Administrator of the Estate of Plaintiff's Decedent MAXIMILIAN PADILLA pursuant to 755 ILCS 5/27-6, and brings this Action in that capacity.

89. At the time of his death, Plaintiff's Decedent MAXIMILIAN PADILLA left the following next of kin, each having lost his society, companionship and love as well as having suffered pecuniary injury, including, but not limited to, the loss of money, goods and services:

> Jose M. Padilla, (father)
> Ruth Jacqueline Padilla (mother)
> Carolina Padilla (minor, sister)
> Jacqueline Padilla (minor, sister)

JOSE M. PADILLA, as Representative of Plaintiff's Estate of MAXIMILIAN PADILLA, prays that this court enter judgment against Defendants WINDOW COVERING MANUFACTURERS ASSOCIATION, and WINDOW CONVERING SAFETY COUNCIL, and their agents, in a sum in excess of this Court's Jurisdictional amount.

**Date: July 10, 2009**

                                                   Respectfully submitted,

                                                   BY: *Arturo Jauregui*
                                                   Arturo Jauregui
                                                   One of Plaintiff's Attorneys

Firm No. 37050
Jauregui & Associates
120 West Madison Street
Suite 400
Chicago, Illinois 60602
(312) 781-9103

PDF Complete. Your complimentary use period has ended. Thank you for using PDF Complete. Click Here to upgrade to Unlimited Pages and Expanded Features