# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSE M. PADILLA, as the Special Administrator of the Estate of Maximilian Padilla, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 09-cv-1222 |
| HUNTER DOUGLAS WINDOW COVERINGS, INC., et al. | ) ) ) | Judge Robert M. Dow, Jr. |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jose M. Padilla ("Plaintiff") filed a five-count amended complaint [34] on July 17, 2009, alleging violations of state contract and tort law by Defendants Hunter Douglas Window Coverings, Inc. ("Hunter Douglas"), Window Covering Manufacturers Association ("WCMA"), Window Covering Safety Council ("WCSC"), and American Blind and Wallpaper Factory, Inc. ("American Blind"). The Court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. Before the Court is a motion to dismiss [37] Count IV of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) filed by the WCMA and the WCSC.[1] For the reasons stated below, the motion is denied.

---

[1] The WCMA and the WCSC do not specify the grounds for their motion to dismiss. However, the motion seeks dismissal of Count IV on the ground that Plaintiff cannot, as a matter of law, establish an element of his claim against the WCMA and the WCSC. Therefore, the Court will treat the motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.

## I. Background[2]

On April 22, 2008, Plaintiff's three-year old son died from strangulation after he became entangled in the metal beaded chain cord on the miniblinds at his home. Cmplt. ¶ 2. The miniblinds at issue were manufactured by Hunter Douglas, a Delaware corporation in the business of manufacturing and selling window coverings, including vertical miniblinds with cords and metal bead chains exceeding 7¼ inches in length. *Id*. ¶¶ 2, 4. Plaintiff purchased the Hunter Douglas miniblinds over the internet from American Blind, a Michigan Corporation doing business in Illinois. *Id*. ¶ 10.

Hunter Douglas is a member of the WCMA, an industry trade group that represents and promotes the interests of manufacturers, fabricators and assemblers of window coverings. *Id*. ¶ 6. The WCMA is responsible for developing and implementing standards for the manufacture of window coverings, including vertical miniblinds and cords. *Id*.

In 1994, the Consumer Product Safety Commission threatened to take action against the window coverings industry to address the hazard of strangulation posed by some window coverings. *Id*. ¶ 59. In order to avoid a mandatory recall by the Consumer Product Safety Commission, the WCMA committed to undertaking corrective action to make window coverings already in American homes safer, as well as to set standards to make new window coverings safer. *Id*. ¶ 60. The WCMA established the WCSC – a coalition of major U.S. manufacturers, importers and retailers of window coverings (including Hunter Douglas) – to spearhead the voluntary corrective action plan. *Id*. ¶¶ 8, 57, 61. The WCMA and the WCSC initiated a retrofit and recall program designed to reduce the likelihood of pull-cord strangulations by advising

---

[2] For purposes of the motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

consumers to eliminate the loop in two corded horizontal and vertical blinds by cutting the cord above the tassel, removing the equalizer buckle, and adding safety tassel at the end of each cord. *Id*. ¶ 62. As part of the retrofit and recall program, the WCSC was to provide retrofit kits to individuals who had purchased miniblinds, including vertical miniblinds with cords and metal bead chains greater than 7¼ inches in length. *Id*. ¶¶ 56, 57. The WCSC also sought to warn consumers of the strangulation danger that such cords and chains posed to infants and young children. *Id*. ¶ 57.

**II.     Legal Standard on a Rule 12(b)(6) Motion**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.    Analysis**

Count IV of the first amended complaint asserts claims against the WCMA and the WCSC on a theory of negligent undertaking. Plaintiff alleges that, by initiating the retrofit and recall program, the WCMA and the WCSC undertook a duty to warn about the risk of strangulation posed by window coverings and to carryout a corrective action plan adequately designed to eliminate the identified strangulation hazard. To state a claim for negligence, Plaintiff must allege that Defendants owed a duty of care to Plaintiff, Defendants breached that duty, and that breach proximately caused the Plaintiff damage. See *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007). The WCMA and the WCSC contend that Plaintiff cannot, as a matter of law, establish the first element of a negligence claim – that that they owed Plaintiff a duty. Thus, the crux of the motion before the Court is whether any undertaking by the WCMA and the WCSC resulted in the imposition of a legal duty to Plaintiff.

Whether a defendant has voluntarily undertaken a legal duty to a plaintiff is a question of law. *Kennedy v. Medtronic, Inc.*, 851 N.E.2d 778, 786 (Ill. App. 1st Dist. 2006). Illinois courts look to Section 324A of the Restatement (Second) of Torts in evaluating voluntary undertaking claims. *Bailey v. Edward Hines Lumber Co.*, 719 N.E.2d 178, 184 (Ill. App. Ct. 1st Dist. 1999). Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third

person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A (1965). Any duty imposed on a defendant under the voluntary undertaking theory is limited to the extent of the undertaking. *Frye v. Medicare-Glaser Corp.*, 605 N.E.2d 557, 560 (Ill. 1992). The Illinois Supreme Court has indicated that public policy supports a narrow construction of voluntary undertakings. See *Doe v. Big Brothers Big Sisters of America*, 834 N.E.2d 913, 928 (Ill. App. Ct. 1st Dist. 2005); *Frye*, 605 N.E.2d at 560.

Plaintiff alleges that the WCMA and the WCSC undertook a duty that, according to Plaintiff, otherwise would belong to Hunter Douglas – the duty to perform in a non-negligent manner a recall and retrofit plan adequately designed to eliminate the identified strangulation hazard, thereby incurring liability to the third-party consumer under subsection (b) of Restatement Section 324A. See Cmplt. ¶ 71. The WCMA and the WCSC respond that Plaintiff cannot establish the existence of a duty because, they argue, Illinois courts have declined to impose liability on trade associations under the theory of voluntary undertaking. The WCMA and the WCSC rely on the Illinois Appellate Court's decision in *Bailey v. Edward Hines Lumber Co.* and on cases in which courts in other jurisdictions have declined to impose liability on trade associations for injuries caused by products manufactured or sold by their members.

In *Bailey*, carpenters who were injured while installing a roof truss system brought suit against the lumber company that had supplied the trusses. 719 N.E.2d at 180. The lumber

company asserted a third-party contribution claim against a non-profit trade association which had published a pamphlet containing commentary and recommendations for the installation of wood trusses. *Id.* The pamphlet stated that the recommendations were "tentative," and were "presented only as a *guide*." *Id.* (emphasis in original). In the pamphlet, the trade association further "expressly disclaim[ed] any responsibility for damages arising from the use, application, or reliance on the recommendations and information contained herein by building designers or by erection contractors." *Id.* The lumber company argued that the trade association had undertaken a duty to the carpenters by distributing the pamphlet. *Id.* at 184. The *Bailey* court concluded that the trade association had not undertaken a duty to the carpenters because the instructions were advisory, the trade association could not force the carpenters to follow the instructions, and the trade association had expressly disclaimed liability in the pamphlet. *Id.* at 185.

The *Bailey* court stressed that its conclusion that the trade association owed no duty was based on the particular facts of the case, which differ significantly from those currently before this Court. Here, based on the well-pleaded facts in the complaint, there is no indication that the WCMA and the WCSC merely issued non-mandatory guidelines regarding window covering safety. Rather, Plaintiff alleges that the WCMA and the WCSC undertook to complete a recall and retrofit program designed to make blinds like those in Plaintiff's home safer. Therefore, the *Bailey* court's conclusion that the trade association for the truss plate manufacturing industry had undertaken no duty does not persuade the Court that dismissal is warranted in this case.

The *Bailey* court also reasoned that public policy favored not imposing a duty of care on trade associations, as doing so could discourage the formation of such associations, which "serve many laudable purposes in our society." 719 N.E.2d at 183. While courts may take public

6

policy considerations into account when determining if a duty has been voluntarily undertaken, *Jakubowski v. Alden-Bennett Const. Co*., 763 N.E.2d 790, 801 (Ill. Ct. App. 1st Dist. 2002), the *Bailey* court expressly confined its decision to the record before it, refusing to make a "ringing policy pronouncement concerning the non-existence of a duty in all cases involving trade associations." *Bailey*, 719 N.E.2d at 183. Therefore, while public policy certainly is "part of the legal mix" that informs the Court's determination of whether the WMCA and the WCSC undertook a duty to consumers like Plaintiff, it is not dispositive. *Id.*

The WCMA and the WCSC also point to cases from other jurisdictions in which courts have declined to impose liability on trade associations for injuries caused by products manufactured or sold by their members under a voluntary undertaking theory. See *Friedman v. F.E. Myers Co.,* 706 F.Supp. 376, 383 (E.D. Pa. 1989) (water pump manufacturer trade association did not undertake duty to homeowners where it primarily performed services for its members, not the public); *Meyers v. Donnatacci*, 531 A.2d 398 (N.J. Super. Ct. 1987) (swimming pool industry trade association owed no duty to pool user where trade association promulgated suggested minimum standards but had little power to enforce those discretionary standards); *Howard v. Poseidon Pools, Inc.*, 506 N.Y.S.2d 523, 527 (N.Y. Sup. Ct. 1986), *aff'd in part, rev'd on other grounds,* 134 A.D.2d 926, 522 N.Y.S.2d 388 (N.Y. App. Div. 1987) (swimming pool industry trade association owed no duty to pool user because it lacked authority to control manufacturer); *Commerce and Industry Ins. Co. v. Grinnell Corp*., 1999 WL 508357, at *4 (E.D. La. July 15, 1999) (fire safety association that "merely set[] forth safety standards to be used as minimum guidelines that third parties may or may not choose to adopt, modify or reject[,] * * * [and had] no control over whether or which jurisdictions adopt[ed] its voluntary standards" owed no duty to insurer); *N.N.V. v. American Assn. of Blood Banks*, 89 Cal.Rptr.2d

7

885 (Cal. Ct. App. 4 Dist. 1999) (blood banking association did not owe a duty of care to third parties such as the patient when it undertook to promulgate non-mandatory blood-bank safety standards).

Those cases indicate that courts have declined to impose a duty on trade associations that promulgate safety standards but exercise no control over whether manufacturers abide by those standards. See *Bailey*, 719 N.E.2d at 182 (courts have "declined to impose a duty on the trade associations either because they did not manufacture the injury-causing products or because they did not exercise control over the manufacturers of those products," and have only imposed a duty on a trade association where the trade association "exercised a degree of control over their members"); *Commerce and Industry Ins. Co.*, 1999 WL 508357, at *4 ("Under the Restatement [Section 324A] * * *, most courts have focused on the amount, if any, of control a trade association wields over the behavior of its members concerning, for example, the proper implementation of its standards"). But here Plaintiff does not contend that the WCMA and the WCSC undertook a duty to consumers by setting safety standards for the window covering industry. Rather, Plaintiff alleges that the WCMA and the WCSC undertook to warn consumers and to provide retrofit kits. Unlike in the cases cited by the WCMA and the WCSC, the issue is not whether the WCMA and the WCSC can be held liable for unsafe products made by their members, but whether they can be held liable for failing to make those products safe and warn about their risks, after allegedly undertaking to do so. Thus, the cases cited above do not demonstrate that Plaintiff cannot establish liability under Restatement Section 324A, as the WCMA and the WCSC contend.

In sum, on the basis of the pleadings alone, the Court cannot conclude, as a matter of law, that the WCMA and the WCSC owed no duty to Plaintiff. Therefore, it would be premature to

preclude Plaintiff from attempting to establish liability under Section 324A. If, after discovery, the WCMA and the WCSC believe that they can show that the scope of their undertaking was narrower than the undertaking alleged in the complaint, they are of course free to raise the issue (or any other appropriate argument) at the summary judgment stage.[3]

**IV. Conclusion**

For the reasons stated above, Defendants WCMA and WCSC's motion to dismiss Count IV of the complaint [37] is denied.

Dated: January 19, 2010

_____
Robert M. Dow, Jr.
United States District Judge

---

[3] In their reply brief, the WCMA and the WCSC argued that Plaintiff cannot state a claim under Restatement Section 324A(b) because Illinois does not recognize a common law duty to provide post-sale warnings or to recall dangerous products after they are sold, and thus they could not have undertaken to perform any duty owed by Hunter Douglas. However, because the WCMA and the WCSC did not raise this argument in their opening brief, the Court cannot in fairness consider it in ruling on the motion to dismiss. *Adamson,* 441 F.3d at 521 n.2 (7th Cir. 2006) (party forfeits an argument if it is raised for the first time in a reply brief). That argument, too, can be raised again at the summary judgment stage.