IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE M. PADILLA, as the Special Administrator of the Estate of Maximilian Padilla, <br><br>        Plaintiff, <br><br>  v. <br><br> HUNTER DOUGLAS WINDOW COVERINGS, INC.; WINDOW COVERING MANUFACTURERS ASSOCIATION; and WINDOW COVERING SAFETY COUNCIL, <br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Case No. 09 CV 1222 <br><br>    Judge John Z. Lee |

## ORDER

In this case, Defendant Hunter Douglas filed three motions *in limine*. "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Rulings *in limine* avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Trial courts have broad discretion in ruling on evidentiary issues before trial. *See United States v. Chambers*, 642 F.3d 588, 594 (7th Cir. 2011); *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 426 (7th Cir. 2000). The Court will only grant a motion in limine when the evidence is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir.1997); *Betts v. City of Chi., Ill.*, 784 F. Supp. 2d 1020, 1023 (N.D. Ill. 2011). Moreover, rulings on motions *in limine* are "subject to change when the case unfolds." *Luce*, 469 U.S. at 41; *see also Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006). Indeed, "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41-42. The Court ruled on Defendant's first two motions *in limine* in a previous Order [203], and the Court now grants in part and denies in part Defendant's third motion *in limine* [178].

For the reasons stated on the record and further explained below, the following exhibits offered by Plaintiff are excluded from being introduced at trial: 27, 41, 42, 47, 55, 67, 73, 77, 81, 83, 85, and 86. For the reasons explained below and stated on the record, the following Plaintiff's exhibits may be introduced at trial, subject to any remaining objections: 22, 43, 66, 74, 87, 90, and 101.

I.    Evidence of Accidents Post-Manufacture and Sale

During the February 11, 2014, pre-trial hearing, Plaintiff explained to the Court that his purpose for introducing evidence of other similar accidents was to demonstrate that the Defendant had notice of the danger of its product. To prevail in a negligent design case in Illinois, Plaintiff "must show that the manufacturer knew or should have known of the risks posed by the product design *at the time of manufacture*" of the product. *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011) (internal quotation omitted) (emphasis added). Furthermore, a continuing duty to warn may be imposed upon the manufacturer if the manufacturer "knew or should have known the product was unreasonably dangerous *at the time of sale*." *Id.* at 1162 (emphasis added). The salient time of inquiry with respect to what Defendant knew or should have known is when the window blinds at issue were manufactured and sold. Here, based upon the record, the parties state that the operative date is "a few months prior to December 1995." Accordingly, any evidence of accidents that took place post-manufacture and sale and the degree of Defendant's knowledge of those incidents post-manufacture and sale have no probative value and are inadmissible under Fed. R. Evid. 401. Furthermore, to the extent the exhibits have any relevance at all, the Court finds that whatever probative value the exhibits may have is substantially outweighed by the danger of unfair prejudice to Defendant and undue delay at trial. *See* Fed. R. Evid. 403. For these reasons, Exhibits 41, 42, 47, 55, 73, 77, 81, 83, and 85, which refer to accidents that occurred after the manufacture and sale of the blinds at issue, may not be introduced at trial.

II.   Whether Other Accidents Are Substantially Similar

"Evidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988). As noted, here, Plaintiff offers these exhibits to show notice. In order for Plaintiff to introduce evidence of other accidents involving window blinds, Plaintiff "must show that the other accidents occurred under *substantially similar circumstances*." *Id.* While the substantial similarity requirement is "especially important" in cases where the evidence is proffered to the existence of a dangerous condition or causation, "the requirement of similarity is less strict when the evidence is sought to be admitted show notice. . . . [T]he rule requiring substantial similarity of those accidents should be relaxed." *Id*. at 1269 n. 9.

In its motion *in limine*, Defendant argues that Plaintiff attempts to introduce evidence of other accidents that are not substantially similar to the accident involving Maximillian Padilla ("Max"). For the incident reports that both describe substantially similar accidents and pre-date the manufacture and sale of the blinds at issue, these incidents will be admissible to the extent that the reports are public records, Fed. R. Evid. 803(8), or meet another hearsay exception, and are otherwise admissible. That said, portions of the incident reports that merely recount and restate statements made by witnesses to the incidents (in contrast to findings by government officials) may not be introduced at trial because Fed. R. Evid. 803(8) cannot be used as a backdoor for introducing such hearsay statements. 5 *Weinstein's Federal Evidence* § 803.10[4][a] (2d ed. 2013). Plaintiff should redact the appropriate portions.

Furthermore, although Defendant argued during the pre-trial hearing that there is no definitive proof that Hunter Douglas actually read and considered all of the incident reports, the Court notes that Hunter Douglas provided a number of the incident reports to Plaintiff during discovery from its own files. Thus, the Court cannot at this time preclude the possibility that Hunter Douglas did have notice of the incident reports prior to the sale and manufacture of the window blinds at issue. The Court will address each of the exhibits at issue.

The Court finds that Exhibit 22 introduces evidence of an accident occurring under substantially similar circumstances, and Exhibit 22 may be introduced at trial to show notice to the Defendant of the danger of its product. Exhibit 22 is a March 18, 1994, letter addressed to Hunter Douglas from the United States Consumer Product Safety Commission ("CPSC"). The letter describes incidents of children hanging to death from looped window cords from 1973 to 1993. The victims in the report included children from four months to seven years of age, and Max was three-years old when he died. The children in the report also died in the same manner as Max, hanging themselves on looped window cords. For its part, Defendant contends that it is not clear whether the window blinds at issue were all vertical blinds or horizontal blinds and, therefore, Plaintiff has not demonstrated that these incidents are substantially similar to the one at issue. Indeed, from the letter's reference to a "Break-Thru" safety tassel, it appears that at least some of the incidents involve horizontal blinds and not vertical blinds as the one in question. However, because Plaintiff is offering these incidents for the purposes of establishing notice to Defendant of the potential dangers of looped cords from window blinds, the Court finds that the incidents are sufficiently similar to satisfy the requirement of relevance. *See Nachtsheim*, 847 F.2d at 1269, n.9.

The Court finds that Exhibit 43 introduces evidence of an accident occurring under substantially similar circumstances, and Exhibit 43 may be introduced at trial to show notice to the Defendant of the danger of its product. Exhibit 43 is a December 13, 1991, investigation report that describes a three-year old male who died from strangulation on a looped beaded chain on a vertical window blind. The victim in the report is the same age and gender as Max and also died while in his room. The Court finds that the commonality of a three-year old child dying after strangling on a looped mechanism from a vertical window blind in his room demonstrates that the accident described in the report occurred under substantially similar circumstances for the purposes of notice.

The Court finds that Exhibit 66 introduces evidence of an accident occurring under substantially similar circumstances and may be introduced at trial to show notice to the Defendant of the danger of its product. Exhibits 66 is an investigation report describing a November 7, 1995, incident. While the incident described in Exhibit 66 may have occurred after the purported October 1995 sale of the blinds to Ms. Davis, Ms. Davis did not precisely remember when she purchased the blinds at issue. For this reason, the Court declines to exclude Exhibit 66 based solely on the fact that it may potentially post-date the manufacture and sale of the blinds. Exhibit 66 describes a child close to her third birthday, who died from strangulation on a looped window cord in her room. The Court finds that the commonality of a child dying from hanging on a looped window cord in her room demonstrates that the accident described in the report occurred under substantially similar circumstances for the purpose of notice. Exhibit 74, which appears to relate to the same incident as Exhibit 66, has been withdrawn by Plaintiff.

The Court finds that Exhibit 67 does *not* introduce evidence of an accident occurring under substantially similar circumstances, and Exhibit 67 may not be introduced at trial to show notice to the Defendant of the danger of its product. Exhibit 67 is a December 1, 1983, Illinois Department of Public Health report that describes a sixteen-month old child who died from a drapery cord. The Plaintiff has failed to show that the drapery cord referenced in the report is substantially similar to the looped window cord at issue. Indeed, it appears from the document that the drapery cord was not looped at all. Given that the drapery cord could have functioned differently from a looped window cord, Plaintiff has failed to show that the accident described in the report occurred under substantially similar circumstances.

The Court finds that Exhibit 101 introduces evidence of an accident occurring under substantially similar circumstances, and Exhibit 101 may be introduced at trial to show notice to the Defendant of the danger of its product. Exhibit 101 is a February 13, 1991, investigation report that described a fourteen-month old child who died from strangulation on a looped window cord in her room. The Court finds that the commonality of a child dying from hanging on a looped window cord demonstrates that the accident described in the report occurred under substantially similar circumstances for the purposes of notice.

III.    Other Exhibits

As stated on the record, the Court finds that Exhibit 27 is inadmissible hearsay and unduly prejudicial and may not be introduced at trial. Exhibit 27 is a July 13, 1995, CPSC report that includes excerpts of interviews, handwritten reports, and pictures of dolls hanging from looped window cords. It includes multiple levels of hearsay, and lacks indicia of reliability and truthfulness as provided in Fed. R. Evid. 803(8)(B). For example, not only is the report that accompanies the fax cover sheet incomplete, but the cover sheet itself states, "Ready to begin your retrofit program?" From this statement, it is clear that the fax and its attachment was an attempt to pursued Defendant to take an action and suggests that the sender, who cannot be cross-examined at trial, may have selected portions of the report to do so. Furthermore, the Court notes that the photographs that are contained in the attachment are of such poor quality that it is not immediately clear that it is a doll, and not an actual infant, that is hanging limp from the looped cord. For these reasons, the Court also finds that any probative value that this exhibit may have is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. Thus, the Court excludes Exhibit 27.

Exhibit 86 appears to be a complete copy of Exhibit 27, but it was not produced from Defendant's files. Accordingly, Plaintiff has failed to demonstrate that it is relevant to the issue of notice. Additionally, the Court notes that the photographs in the exhibit suffer from the same malady as the photographs in Exhibit 27. Therefore, Exhibit 86 is also excluded.

As stated on the record, the Court finds that Exhibit 90 may *not* be excluded at this point in time. Exhibit 90 is an August 2007 CPSC Press Release that lists strangulation from looped blind cords as one of the "Top Five Hidden Home Hazards." It states that "the CPSC has identified the Top Five Hidden Home Hazards – associated with products that people may be using every day, but are unaware of the dangers that they can cause. These home hazards are

4

often unseen or unnoticed by consumers." The exhibit goes on to state that "[c]hildren can strangle on window drapery and blind cords that can form a loop." Plaintiff would like to use Exhibit 90 to demonstrate that he was not aware of the risk of looped blind cords in order to rebut Defendant's contention that Plaintiff was contributorily negligent. Exhibit 90 appears to meet the public record exception to hearsay, Fed. R. Evid. 803(8)(A). The CPSC is a public office, and it created the report under its legal duty to protect the public from consumer products. Furthermore, the report contains the agency's findings based upon its investigations. Thus, the Court declines to exclude Exhibit 90 at this time.

Finally, Exhibits 78 and 79 are group exhibits, and Plaintiff will disaggregate the documents within each exhibit and provide copies to the Court and Defendant's counsel.

**SO ORDERED**              **ENTER: 2/13/14**

_____

**JOHN Z. LEE**
**United States District Judge**